Chief Justice
Marshall delivered the opinion of the Court.
This action of debt was brought by the administrators of George Smith, against the heirs of Bigger I. Head, to recover the amount of a note of said Head for $200, due in 1819. The action was commenced in January, 1848, against all the heirs, five in number, but was abated, upon the Sheriff’s return, as to all except Litsey and wife, of whom the latter was one of the children and heirs of Head. And the jury having found that real estate had descended to her of value greater than the debt, a judgment was rendered against Litsey and wife for the whole. This is now complained of as an error in the proceedings, and was probably the ground of the motion in arrest of judgment.. But, as in virtu® of the subjection of real estate to the payment of debts, and of the remedies allowed against heirs for coercing out of that estate the debts of the ancestor from whom it has descended, they are to be regarded as jointly, or jointly and severally, bound, to the extent of such assets, it has been the practice to regard the case of heirs thus bound as coming within the same rule of proceeding which is authorized in all other cases of joint obligations, and which allows an abatement as to those who are returned as “no inhabitants ” or “not found,” and a judgment against the others upon whom process has been served. And whatever hardships may result from the rule in particular cases, it is no greater in the case of heirs than in the case of other co-obligors, of whom one alone may, in the first instance, be subjected to the entire debt, with no other remedy than that of enforcing contribution from his co-obligors, which one heir may also do against his co-heirs.
By the fiist section of the act of J819 (Stat. Levi 780) suit mají be brought against the heirs of an obligor after judgment and a return of no assets against the adminislrator;no suit for a devastavit or bill of discovery against the administrator is required.
But. the material questions presented in the case, grow out of the fact that this action is brought against the heirs alone, after an ineffectual suit against the administrators of Bigger I. Head, their indebted ancestor. The declaration, after setting out the note, shows that a suit had been brought upon it against the administrators of Head in 1831, and that, on a judgment obtained m that year, an execution was issued in due time on which the proper officer had returned, in substance, that there was no property in the hands of the administrators to satisfy the judgment. A recurrence to the first section of the act of 1819, (Stat. Law, 780,) which authorizes a separate action against the heirs or devisees, in the cases therein stated, will show that these averments bring the case within the statute, which makes no reference to the time within which the suit against the personal representatives, or the subsequent one against the heirs, is to be brought. It merely authorizes the second suit, “ if it shall appear, by a judgment of record, or by the return of the proper officer, that there is no property of the deceased in the hands of the executor or administrator to satisfy the first judgment.” It does not require the plaintiff to seek satis* faction out of the personal estate within any particular period, nor in any other manner than by judgment and execution. It does not drive him to a bill of discovery, nor to an action for a devastavit-, nor does it make a devastavit, by the administrator, a bar to the action against the heirs; nor does it interfere, in any respect, with this latter action, or with the principles which are to govern it, further than to require that it shall appeal* as above, that there is not property of the deceased in the hands of the administrator, &c., and to declare that the judgment in the first action, if not satisfied, shall be no bar to the second. The whole effect of the statute is, that, under the circumstances therein stated, the creditor may sue the heirs (fee. alone, just as he might do under the second section of the act, if there were no administrator ; and with the same right of recovery as to them, as if he had sued them with the administrator, *76 or as if he had sued them alone for the want of an administrator. In any of these cases, the heirs may, in defence of the action against them, not only rely upon no assets having descended to them, but may deny the justice of the demand in its origin, or insist that it has been paid or otherwise discharged. But we do not perceive that they can defeat the action on the ground of any delay or laches in pursuing the creditor’s remedy against the personal estate, unless they might do so by showing that the delay was fraudulent, or at least injurious to them. There is no presumption as between the creditor and the heirs, that the administrator has committed a devastavit, because when he is sued by the creditor, it appears that he has no assets. Under our statutes he is not bound to plead plene administravit, though it be true, and a return of nulla bona after a judgment by default, is not evidence of a devastavit, even as between him and the plaintiff. If, in the action brought in 1831, nine years after the death of the debt- or and the grant .of administration on his estate, his heirs had been sued jointly with his administrators, the former could not have resisted a recovery against themselves on the ground of the delay in bringing the suit; and if, in proceeding by fi.fa. on the judgment against the administrators and heirs/ no assets were found in the hands of the administrators, the lands descended to the heirs would have been immediately liable to seizure and sale in satisfaction of the judgment. This being so, it seems unreasonable, to suppose that the same delay which would have been unavailing to protect the heirs in the joint remedy against the real and personal estate, should be available for their protection, when the first suit is against the personal representative alone, and on that remedy being found ineffectual, the separate action against the heirs is resorted to for reaching the real estate descended to them.
Suuh action cannot be defeated by the heirs' by reason of any delay in pursuing the personal representatives ‘'Unless it was fraudulent.
The personal estate is the primary fund for the payment of debts —but the creditor, when both, heir and administratoraiesned, and nulla tona is returned as to the administrator, is notbound to investigate the correctness of the administration; but may-have satisfaction out of the real estate.
*76 The law, it is true, regards the personal estate as the primary fund for the payment'of debts, and gives access to. the real, estate only upon the usual evidence of the failure of the primar^ ’ But it makes the creditor *77 in no way responsible for the due administration of the personal assets; and founds his remedy against the real estate upon the fact alone, to be ascertained.by a return of nulla bona, that the primary fund has failed to satisfy his debt. He may, indeed, investigate the causes of the failure, and enforce, as a means of satisfaction, the persona] responsibility of the administrator for an improper administration of the assets. But he is not bound to do so for the benefit of the heirs, who have their own remedies against the personal representative, and have no right to look to the creditor for the protection of their interests.
. As in the absence of all proof, there is no presumption that the administrators appropriated the assets in their hands to their own personal use, without benefit to the estate, the failure of the remedy against the personal estate, in the present instance, is prima facie to be attributed to the presumed fact that, in the interval of nine years from the grant of administration, the assets had been exhausted in payment of other debts, or by appropriation to the distributees. And although, if there were no real assets, the creditor might, in consequence of his delay, be driven to his action for a devastavit, and be subjected to the loss of his debt if the assets had been duly administered, there is no ground, either in justice or in law, for saying that he shall forfeit his remedy upon the real assets, because he has allowed the administrator an opportunity of either paying other debts in preference to his own, or of distributing the assets before his debt is satisfied.' Nor, indeed, do we perceive that such a consequence should follow from the mere delay or laches of the creditor, if it should even appear that the administrator had not paid out the assets to other creditors, or to the heirs who are themselves distributees, but had appropriated them wholly or in part to-their own use.
The law furnishes to the heirs the same securities and as efficient remedies for protecting their interest, against the mal-conduct of the personal representatives as it furnishes to the creditor. If both are equally in *78 nocent of any participation in the acts from which loss or injury may result, there is surely no reason for throwing the loss upon the creditor, whose claim is founded upon a just equivalent, for the benefit of the heirs who are mere volunteers. And we are of opinion, that where the creditor has been merely passive, and has neither caused the mal-appropriation, nor impaired the remedy of the heirs for the injury to them, his legal remedy against the heirs is not affected by the mere fact that he postponed his íemedy against the personal estate until after it had been wasted. But be this as it may, the real estate is certainly not discharged from its liability by the mere delay, unless it appear, that in consequence of that delay, there has been a mal-appropriation of the personal assets, without benefit to the heirs; and even then, we are inclined to the opinion, that it must appear that the remedy of the heirs has been materially injured by the delay.
So far then as time is concerned, there was as much diligence used in this case, in the remedy against the administrators, as the statute requires. And the Court certainly committed no error to the prejudice of the defendants in the action, after saying to the jury that an honest, bona fide, effort to collect the debt from the personal representatives was necessary; in telling them further, that the judgment and return axsprima.fiacie evidence of diligence. They are conclusive evidence of all the dilgence required by the statute. And if, as the jury were also told, and as they were authorized to find, the administrator disposed of the assets by paying debts, or by distributing them to the heirs, the plaintiff was entitled to recover in this action, notwithstanding his delay in suing the administrators. The jury having found that the assets were thus disposed of, and there being no pretence that this debt has ever been paid, there is no ground in the merits of the case for disturbing the verdict or the judgment. We should, however, notice the agreement of 1827, between the committee of the creditor, who was then a lunatic, and the administratrix of Head, and her then husband, to *79 the effect that the former would not urge the collection of the debt during the life of the lunatic, and would endeavor, after his death, to have it satisfied out of that portion of his estate which should come to the administratrix, (who was his sister,) or to her children, the heirs of Head. And we remark that, although it may account for the delay in suing the administrators, and in the subsequent proceedingagainst the heirs, which was not commenced until after the effort to settle the debt, in the manner agreed on, had been ineffectually made, (see Hardin, &c. vs Smith's executors, 7 B. Monroe, 390,) this arrangement was prima facie, and indeed avowedly, for the benefit of the heirs. And if under color of this arrangement, the administratrix, or the administrator, misappropriated any part of the assets to the injury of the heirs, it devolved upon them to show it, which they have wholly failed to do. On the contrary, not only was the arrangement not obligatory upon the administratrix, but it may be inferred from the evidence that the assets had been appropriated before it was made, and this inference would have been strengthened by the e /idence (improperly excluded) that Bigger I, Head was largely indebted at his death. This agreement was, moreover, a fact before the jury, and they have found, upon the whole evidence, how the assets were disposed of. The court did not err in refusing the instruction asked for in reference to this agreement. Nor was the knowledge of the creditor, that the administrators had assets which was referred to in the same instruction, in any way material to the law of the-ease.
The case of Buford vs M'Kee's executors, &c., (3 B. Monroe, 224,) referred to in argument, does not relate to the legal remedy given by the statute against heirs,, but to the creditor’s right to go into- equity for the purpose of subjecting land in the hands of the heirs of the devisee of his debtor, which was denied under the' circumstances of that case. The principles of the present opinion apply to the statutory legal remedy. But if this were a case in equity,- the heirs have not shown *80 the equitable grounds for resisting the enforcement of the claim against them, which appeared in the case referred to, and on which that case seems to have been decided.
R. J. Browne for appellants; J. W. L. Harlan and Ballinger for appellees. ' .
Wherefore the judgment is affirmed.